UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA

             v.                           15 CR 292 (PGG)

ALEXANDER CATANO ARAGON *et al.*

                Defendants,

-----------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF MR. DANIEL GERMAN SANCHEZ ALARCON'S PRE-TRIAL MOTION TO DISMISS THE INDICTMENT FOR LACK OF JURISDICTION AND OTHER RELIEF

MICHAEL W. MARTIN
Executive Director

IAN WEINSTEIN
Supervising Attorney

Lincoln Square Legal Services
Fordham Law School
150 West 62nd Street, 9th Floor
New York, New York 10023
Tel: (212) 636-6934
Attorneys for Defendant
**Daniel German Sanchez Alarcon**

On the memo: Daisy Sexton
                Princess Uchekwe
                Legal Interns

Dated: New York, New York
       November 21, 2016

Table of Contents

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 3

I.      THE INDICTMENT MUST BE DISMISSED BECAUSE THE DEFINE
AND PUNISH CLAUSE OF THE UNITED STATES CONSTITUTION DOES
NOT PERMIT THE ASSERTION OF JURISDICTION IN THIS CASE ........................................ 4

        A.    The Define and Punish Clause is Limited to Persons who Committed Criminal Conduct on the
        High Seas or Who Violate the Law of Nations .......................................................... 5

        B.    The Plain Language of the Text Limits the Scope of the Clause to Felonies Committed on the
        High Seas ....................................................................................................... 6

        C.    The Founders Chose the Word "Define" and Included the Locational Requirement in this Clause
        Because the Danger of Jurisdictional Overreach Required that this Power be Clearly and Carefully
        Limited ........................................................................................................... 8

        D.    Ignoring the Locational Requirement Would Grant Universal Jurisdiction to All Felonies, which
        the Founders did not Intend ................................................................................ 9

        E.    Complicity is a Substantive Theory of Criminal Liability – Not a Theory of Jurisdiction ............. 10

II.     THE STATUTE DOES NOT CONFER JURISDICTION IN THIS CASE ........................... 12

        A.    The Plain Language ......................................................................................... 13

        B.    The Text of the MDLEA Demonstrates Congressional Intent to Limit the Extraterritorial Reach of
        the Statute ....................................................................................................... 15

        C.    The United States Criminal Law Should not be Construed to Reach Extraterritorial Acts
        Committed by Foreign Nationals in a Foreign Country ............................................. 16

        D.    Definitions of Crime and Theories of Complicity do not Confer Jurisdiction ......................... 17

III.    THE INDICTMENT IS FATALLY NON-SPECIFIC ON THE REQUIRED
ELEMENT OF THE ALLEGED AGREEMENT AMONG THOSE ON LAND AND
THOSE ON THE VESSEL .................................................................................................... 19

IV.     THIS PROSECUTION VIOLATES MR. SANCHEZ'S FIFTH AMENDMENT
DUE PROCESS RIGHTS BECAUSE HE HAS NO DIRECT OR INDENTIFIABLE
CONNECTION TO THE UNITED STATES ............................................................................. 21

V.      MR. SANCHEZ JOINS MR. CATANO'S MOTION ............................................................ 24

CONCLUSION ................................................................................................................... 24

APPENDIX 1 ...................................................................................................................... 27

        Current Version of 46 U.S.C. § 70503 ................................................................. 28

        Former Version of 46 U.S.C. § 70503 ................................................................... 30

i

# TABLE OF AUTHORITIES

Cases

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) ................................................................. 22

*Cochran v. United States,* 157 U.S. 286 (1895)..................................................................... 21

*Flores v. Southern Peru Copper Corp.,* 414 F.3d 233 (2d. Cir 2003) ................................. 16

*Nye & Nissen v. United States,* 336 U.S. 613 (1949)............................................................ 19

*Sosa v. Alvarez- Machain*, 542 U.S. 692 (2004) ................................................................... 17

*United States v. Ali,* 718 F.3d 929  (D.C. Cir. 2013) ..................................................... 11, 22

*United States v. Ballestas,* 795 F.3d 138 (D.C. Cir. 2015). ........................................ 7, 18, 21

*United States v. Bellaizac-Hurtado,* 700 F.3d 1245 (11th Cir. 2012)..........................*passim*

*United States v. Bodye,* 172 F. Supp. 3d 15 (D.D.C. 2016) ................................................. 22

*United States v. Brehm*, 691 F.3d 547 (4th Cir. 2012)......................................................... 22

*United States v. Caicedo,* 47 F.3d 370 (9th Cir. 1995 ......................................................... 23

*United States v. Comstock*, 130 S. Ct. 1949 (2010) ............................................................... 8

*United States v. Crowley*, 236 F.3d 104 (2d Cir. 2000)....................................................... 20

*United States v. Davis*, 905 F.2d 245 (9th. Cir 1990) ......................................................... 23

*United States v. Estupinan*, 453 F.3d 1336 (11th Cir. 2006) .............................................. 15

*United States v. Furlong*, 18 U.S. 5 Wheat. 184 (1820) ..................................... 5, 6, 10, 11

*United States v. Hernandez*, 980 F.2d 868 (2d Cir. 1992).................................................. 21

*United States v. Ibarguen-Mosquera*, 634 F.3d 1370 (11th Cir. 2011) ............................ 23

*United States v. Klimavicius-Viloria,* 144 F.3d 1248 (9th Cir. 1998)...........................*passim*

*United States v. Lopez*, 514 U.S. 549 (1995) .......................................................................... 8

*United States v. Moreno-Morillo,* 334 F.3d. 819 (9th Cir. 2003) ...................................... 15

*United States v. Ospina*, 823 F.2d 429 (11th Cir. 1987)..................................................... 20

*United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006)........................................... 2, 11, 18

*United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003) .................................................. 15

*United States v. Smith*, 18 U.S. 143  (1820)........................................................................... 9

*United States v. Vasquez-Chan*, 978 F.2d 546 (9th Cir. 1992) ........................................... 20

*United States v. Vidal-Hungria*, 794 F.2d 1503 (11th Cir. 1986);..................................... 20

Statutes

46 U.S.C. § 70502(c) ............................................................................................................. 14

46 U.S.C. § 70503(a). ............................................................................................................ 19

46 U.S.C. § 70503(b). ....................................................................................................... 15, 19

46 U.S.C. § 70506(b) .......................................................................................................*passim*

Other Authorities

35 NEW ENG. L. REV. 363, 368-9 (2001) .......................................................................... 9, 17

93 MINN. L. REV. 1191, 1226 (2009) ....................................................................................... 9

Federalist Papers, Paper No. 42, January 22, 1788............................................................... 7

Restatement (Third) of Foreign Relations §102(2) (1987) ................................................. 16

Thomas Sheridan, A General Dictionary of the English Language (1780) .......................... 8

Constitutional Provisions

Article I, Section 8, Clause 10 ..........................................................................................*passim*

Rules

Fed. R. Crim. P. 12(b)............................................................................... 1, 21, 23, 26
Fed. R. Crim. P. 7(c)(1) ........................................................................................ 20

## MEMORANDUM OF LAW IN SUPPORT OF MR. SANCHEZ'S MOTION TO DISMISS AND FOR OTHER RELIEF

Mr. Daniel German Sanchez Alarcon ("Mr. Sanchez"), a defendant in this action, respectfully submits this Memorandum of Law in support of his pretrial motion pursuant to Federal Rule of Criminal Procedure 12(b) for an Order: (1) Dismissing the indictment because the exercise of jurisdiction over this case and this defendant violates Article I, Section 8, Clause 10 of the United States Constitution, pursuant to Fed. R. Crim. P. 12(b)(2); (2) dismissing the indictment because no statute or other source of law confers jurisdiction upon this Court to hear this case against this defendant, pursuant to Fed. R. Crim. P. 12(b)(2); (3) dismissing the indictment for lack of specificity, pursuant to Fed. R. Crim. P. 12(b)(2)(B)(iii); (4) dismissing the indictment because continued prosecution of this case violates the defendant's due process rights as protected by the Fifth Amendment to the United States Constitution, pursuant to Fed. R. Crim. P. 12(b)(3); (5) permitting Mr. Sanchez to join in the motion filed, by counsel, on behalf of Mr. Alexander Cataño Aragon, pursuant to Fed. R. Crim. P. 12(b)(3); and for such other and further relief as this Court may deem just and proper.

### PRELIMINARY STATEMENT

This case presents a stark example of jurisdictional overreach. Mr. Sanchez, a citizen of Colombia, faces charges in the Southern District of New York for conduct that occurred in Colombia. He has been swept into this Maritime Drug Law Enforcement Act (MDLEA) case, by the conflation of complicity and the much more fundamental legal idea of jurisdiction. It has been alleged that he conspired with individuals who were transporting cocaine on a stateless vessel that had left the coast of Central America for

1

Australia.  Although he never set foot on territory controlled by the United States during the time in which he is alleged to have violated American law, and his actions are not related to any activities that directly touched or affected any American citizen, resident or interest, the government urges this Court to assert jurisdiction over him.

Jurisdiction in this case is barred by the plain language of the United States Constitution, which does not permit the extraterritorial reach of an American criminal statute to this case.  That plain language, in turn, reflects the Founders' wisdom in creating federal courts of limited jurisdiction and carefully controlling the extraordinary and dangerous claim of power to reach into other nations and attempt to police the world.  The lack of jurisdiction is fundamental and cannot be papered over by resort to conspiracy law and the much-cited *Pinkerton* doctrine.  Jurisdiction is a basic requirement, analytically distinct from criminal complicity.  The availability of a theory of criminal liability does not create jurisdiction in an MDLEA case or in any case. *United States v. Perlaza*, 439 F.3d 1149, 1168 (2006).

Even if the Constitution permitted Congress to give the Court jurisdiction over this case, the MDLEA, upon which the government relies, does not confer jurisdiction here. The statute is complex, defining a crime and granting jurisdiction for the federal courts to hear certain cases charging that crime against specific classes of people.  The plain language of the statute does not grant jurisdiction in this case.   And here too, complicity cannot and does not address the fact that the statute does not confer jurisdiction.

In addition, the assertion of jurisdiction over Mr. Sanchez would violate the Fifth Amendment guarantee of due process of law because his conduct has no connection to United States interests, the indictment is fatally non-specific on the required element of a

common illegal purpose among conspirators and, as argued by his co-defendant, Mr. Alexander Catano Aragon, this Court also lacks jurisdiction because the vessel at issue was not stateless under the MDLEA.  This indictment and case must be dismissed.

## STATEMENT OF FACTS

The Government alleges that on April 14, 2015, the United States Coast Guard apprehended a vessel, the *El Vacan*, 135 nautical miles off the coast of the Isla de Coco, Costa Rica, thousands of miles from the territorial United States. The vessel is alleged to have been stateless and to have been used to carry cocaine. Mr. Sanchez, who is a citizen and resident of Colombia, was never on board the *El Vacan*.  The government alleges that he was a member of a conspiracy that agreed to ship drugs on the *El Vacan.*

Mr. Sanchez has no connection to the United States. He is not a citizen here. He is not a resident here. He has not visited the United States in over 25 years. None of the conduct for which he is facing criminal sanction in the United States occurred in the United States or had any particular or identifiable relationship to or effect upon the United States or its interests.  Indeed, the drugs that Mr. Sanchez allegedly helped to transport were not bound for the United States and never entered United States territory or waters.

On May 18, 2016, a United States grand jury returned an indictment against Mr. Sanchez and seven co-defendants for conspiring to distribute, and possess with intent to distribute, five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of the MDLEA, 46 U.S.C. § 70503 and 46 U.S.C. § 70506(b).  Following the indictment, Mr. Sanchez was extradited to the United States, where he has remained incarcerated since August 31, 2016. Prior to his extradition, Mr. Sanchez was incarcerated in Bogota, Colombia for approximately one year.

3

## I. THE INDICTMENT MUST BE DISMISSED BECAUSE THE DEFINE AND PUNISH CLAUSE OF THE UNITED STATES CONSTITUTION DOES NOT PERMIT THE ASSERTION OF JURISDICTION IN THIS CASE

This case presents an indictment in a court of the United States of a non-resident, non-U.S. citizen for actions taken in another country that allegedly relates to a vessel intercepted in international waters that was neither coming from nor bound to the United States. The Constitution does not grant Congress the authority for this far-reaching claim of extraterritorial criminal jurisdiction, and therefore the case should be dismissed.

This section discusses why the fundamental grant of power in Article I, Section 8, Clause 10, known as the "Define and Punish Clause" of the Constitution, "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations" does not give Congress authority to grant jurisdiction over Mr. Sanchez in this Court. The Define and Punish Clause gave Congress the power to pass the MDLEA, which Mr. Sanchez has been charged with violating. Congress created this statute to assert jurisdiction over certain narcotics traffickers on the high seas who were not previously subject to the jurisdiction of U.S. Courts and were usually not subject to any law while in international waters.

The MDLEA creates a crime with which such persons may be charged and is discussed in detail in the second section of this memorandum of law. While Mr. Sanchez does not argue that the Maritime Drug Law Enforcement Act itself is unconstitutional, the statute's application to him, in this case, is unconstitutional. The government is asking this Court to exercise the power to prosecute citizens of foreign nations for acts neither committed on American soil nor touching upon identifiable American interests. That is a

far-reaching claim that was first rejected in *United States v. Furlong*, 18 U.S. 5 Wheat. 184 (1820).  The claim still has no validity today.

In the usual case, American criminal law is applied to conduct occurring within the United States.  When the Constitution grants Congress authority and Congress chooses to exercise that authority, it may give a criminal statute extraterritorial reach and create liability for conduct occurring outside the United States.  But given that federal courts are courts of limited jurisdiction, the reach of extraterritorial criminal jurisdiction is limited by the scope of the positive grant of authority and is the exceptional, not the usual, case.

A.  The Define and Punish Clause is Limited to Persons who Committed Criminal Conduct on the High Seas or Who Violate the Law of Nations

The Constitution granted Congress the power to define and punish piracy, felonies committed on the high seas, and certain violations of international law in Art I, Sec 8, Cl. 10. At the time of the founding, the assertion of law on the sea was a real problem for the nascent republic.  The colonies and the young nation had experienced at least two kinds of interference with its maritime trade.  The established powers, primarily Great Britain and France, had each interfered with American ships, sailors, and goods.  From that point of view, the young republic was not favorable to broad claims of jurisdiction and extraterritorial application of law by other states, lest it be further harassed by great powers. But pirates, stateless actors who committed robbery on the high seas, as well as Americans who committed felonies on the high seas and a handful of extraordinarily bad actors who were then understood to violate the Law of Nations were also of concern.

Seen in context, it becomes apparent why the Founders granted Congress the particular powers of Section 8 Clause 10.  It did not grant broad authority to define and punish wrongdoers who might be found upon the oceans, nor did it give Congress the

5

power to vanquish wickedness, wherever it might be found. Attractive as those formulations might be, they would have been foolish for the young republic and contrary to the idea of a government of limited powers and courts of limited jurisdiction. The Founders had no conception of the nascent republic acting as the world's drug enforcement agency, bringing citizens of other nations to its courts to punish them for conspiring with others who ship drugs from yet some other nation to some other nation. That was not what the Constitutional apparatus contemplated nor what it permits, as the text and history each make clear.

B. The Plain Language of the Text Limits the Scope of the Clause to Felonies Committed on the High Seas

Turning first to the text, Article I, Section 8, Clause 10 says, "[Congress shall have power] To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." The clause must be read with precision. The Supreme Court has cautioned against efforts to stretch the definition of the Define and Punish Clause to confer jurisdiction upon people and crimes that are beyond its true scope. In *Furlong,* the Court rejected an attempt to punish murder under the Piracies Clause:

> If by calling murder *piracy,* it might assert a jurisdiction over that offence committed by a foreigner in a foreign vessel, what offence might not be brought within their power by the same device? The most offensive interference with governments of other nations might be defended on the precedent.

18 U.S. (5 Wheat.) at 198.

The Define and Punish clause encompasses three distinct powers: (i) to define and punish piracy; (ii) to define and punish felonies committed on the high seas; and (iii) to

define and punish offenses against the Law of Nations.  *United States v. Ballestas,* 795 F.3d 138, 146-47 (D.C. Cir. 2015). This case does not involve piracy, which is robbery on the high seas, nor does it involve an offense against the law of nations, because narcotics trafficking is not a violation of customary international law.  *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1254 (11th Cir. 2012).

The words that govern this case are "felonies committed on the high seas." Those six words express a very general idea, "felonies", and then limit the reach with the locational requirement, "committed on the high seas."  The first word gives Congress the power to define and punish "felonies," the generic serious crime.  Even today, the exact contours of a "felony" differ from state to state.  Thus, the grant of power could be understood as rather capacious.  In the only discussion of the clause in the *Federalist Papers*, the breadth of the word is noted and a process limitation is suggested with the requirement of a positive statutory provision, with this observation:

> Felony is a term of loose signification, even in the common law of England; and of various import in the statute law of that kingdom. But neither the common nor the statute law of that, or of any other nation, ought to be a standard for the proceedings of this, unless previously made its own by legislative adoption.

*Federalist Papers*, Paper No. 42, January 22, 1788.

The Framers included "felonies," a very broad term, and then limited the broad term with the qualifying language "on the high seas."  The purpose of the clause was not to reach generic felonies, but to reach those committed on the high seas beyond the reach of ordinary domestic criminal law.  The plain words impose a locational requirement on the conduct that gives rise to the felony.  It is a requirement the government cannot meet against Mr. Sanchez, as he did not commit any acts on the high seas and all of his alleged activities occurred within the sovereign nation of Colombia.  The clear text is consistent

with the Founders' purpose in imposing the locational requirement on felonies committed on the high seas. The words plainly do not reach all wrongdoers, but only the narrow class of individuals who committed a felony while at sea. Those were the malefactors who might otherwise fall in a gap and who could be prosecuted without infringing on the rights of other nations.

C. The Founders Chose the Word "Define" and Included the Locational Requirement in this Clause Because the Danger of Jurisdictional Overreach Required that this Power be Clearly and Carefully Limited

The Define and Punish Clause uses the word "define" to indicate that this was a limited power. During the Founding period, the word "define" meant "[t]o give the definition; to explain a thing by its qualities" and "[t]o circumscribe; to mark limits." *Bellaizac-Hurtado*, 700 F.3d at 1250  (quoting Samuel Johnson, A Dictionary of the English Language, 10th ed. 1792); *see also* Thomas Sheridan, A General Dictionary of the English Language (1780) ("To Define … To give the definition, to explain a thing by its qualities; to circumscribe, to *mark the limit*.") (emphasis added). "As James Madison wrote: 'The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite.'" *Bellaizac-Hurtado* at 1250, (quoting *United States v. Lopez*, 514 U.S. 549, 552 (1995), (quoting The Federalist No. 45, pp. 292-93 (C. Rossiter ed. 1961)). For these reasons, the Define and Punish Clause is best understood as "consistent with the structure of our government of enumerated powers." *Id*. at 1251. *See United States v. Comstock*, 130 S. Ct. 1949, 1956-58 (2010) (holding that a federal criminal law must, at least, be necessary and proper to the accomplishment of an enumerated power).

The Define and Punish clause is the only clause in Section 8 that has a locational requirement, and the reason for this is because none of the other clauses raise jurisdictional issues.  The Founders used the word "Define" to capture their intent "to mark limits." In the case of "felonies committed on the high seas," the limit is that the crime had to be committed on the high seas. Had they intended to punish all felonies – regardless of where they took place – there would be no "committed on the high seas."   And reaching all felonies by interpretative sleight of hand would read those words out of the clause.

D.  Ignoring the Locational Requirement Would Grant Universal Jurisdiction to All Felonies, which the Founders did not Intend

"Felonies on the high seas" is the only crime listed in the Define and Punish Clause with a locational requirement. The other two crimes listed are the narrow and specific crimes of piracy, which is defined as robbery on the high seas, *United States v. Smith,* 18 U.S. 143, 162 (1820), and offenses against the laws of nations, which are crimes that are "so threatening to the international community or so heinous in scope and degree that they offend the interest of all humanity, and any state may, as humanity's agent, punish the offender." *Bellaizac-Hurtado* at 1260 (quoting Michael P. Scharf, *Application of Treaty-Based Universal Jurisdiction to Nationals of Non-Party States*, 35 NEW ENG. L. REV. 363, 368-9 (2001)). In contrast to "felonies," those two categories are subject to universal jurisdiction, which "authorizes any nation to exercise jurisdiction over certain offenses, even when no domestic interests are directly implicated."  *Id.* at 1259. However, there is a difference between conduct that all nations criminalize and "offences against the law of nations." *See* Eugene Kontorovich, *Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction Over Drug Crimes*, 93 MINN. L. REV. 1191, 1226 (2009). "Uniform condemnation and criminalization does not make something an

international crime. Murder and rape, and indeed, most malum in se offenses, are also universally condemned, and all fall outside of international law." *Id.*

E.  <u>Complicity is a Substantive Theory of Criminal Liability – Not a Theory of Jurisdiction</u>

The plain language of the Constitution gives Congress the power to define and punish felonies committed on the high seas. Mr. Sanchez was never on the high seas. Yet, persisting in the error *Furlong* warned against, there remains the temptation to stretch the words of the Define and Punish clause by reaching for the government's favorite force multiplier, conspiracy and the *Pinkerton* doctrine. However, the invocation of conspiracy and *Pinkerton* cannot save this case. The theory might be that there was a felony committed on the high seas and Mr. Sanchez conspired with the individuals on the ship to commit that felony. If American law applied, a person in that situation might be said to have conspired with people on the ship but would not be said to have committed conspiracy on that ship. The crime alleged does not fall within the language of the Define and Punish clause.

The government might then suggest that a conspiracy charge is sufficient to make it ***as if*** Mr. Sanchez had been on the high seas, perhaps with the idea that such a person would have the same liability as if he had been on the high seas. Even if that were true, Mr. Sanchez's conduct still falls outside the Define and Punish clause. First, there is a difference between committing an offense on the high seas and having the same liability as a person who committed that act, at that place. Second, it is quite problematic to try to expand a constitutional provision drafted at the founding with a doctrine of criminal complicity that only became the law in the middle of the twentieth Century. As Justice

10

Rutledge's dissent in *Pinkerton* makes clear, the law was unsettled until *Pinkerton* was decided and the rule varied from circuit court to circuit court.   *Pinkerton* was clearly not the universal rule at the founding.   Third and fundamentally, the linguistic problem reflects the deeper problem of *Furlong* – that of opening the floodgates.   On the government's theory, a vast field of extraterritorial jurisdiction opens.   That was not the intent reflected in the words chosen by the Founders.

Attempting to confer jurisdiction over Mr. Sanchez via *Pinkerton* is a fundamental legal error, as the requirement of jurisdiction is distinct from the criminal law doctrine of complicity.   A theory of complicity is not a response to the concern about unauthorized power. It also cannot be the basis for reading additional words into a constitutional provision.   As the Ninth Circuit explained in *United States v. Perlaza*:

> Aiding and abetting is a substantive area of criminal law that allows courts to punish vicariously a defendant . . . The ability of a United States court to exercise jurisdiction over that particular defendant, however, is a preliminary determination totally distinct from the crime itself and must be considered before any United States court or jury may determine whether the defendant acted as a principal or an aider and abettor.

439 F.3d 1149, 1168-69 (9th Cir. 2006).  In addition, conspiracy is not a crime recognized by international law. *United States v. Ali*, 718 F.3d 929, 942 (D.C. Cir. 2013).  If conspiracy were grounds for jurisdiction in this case, that would mean that the U.S. government could arrest anyone, anywhere, against whom there was probable cause to infer an agreement to commit any felony on the high seas – regardless of where the individual committed his acts or if his acts had any impact on the United States. Such an interpretation is both absurd and

dangerous, and it goes against the Founders' effort to clearly define the limits of the Define and Punish clause.

The Define and Punish Clause was not meant to knight the United States as the world's police. If foreign nationals, with no contacts in the United States, committing crimes in foreign countries that do not affect U.S. interests, are punishable under the Define and Punish clause as a "felony committed on the high seas," then what crime does not come within the purview of this clause?  How is that any different from universal jurisdiction?  The floodgates would be opened, and the Founders' intent ignored. If felonies can be punished without regard to a U.S. nexus, then there is no difference between felonies and piracies – the clause may as well have just said "crimes." *See* Eugene Kontorovich, *supra.* at 167. By separating the powers in Clause Ten, the Constitution clearly meant to distinguish between the two. *Id.*  And the distinction is this: the United States has universal jurisdiction over piracies, but it does not have universal jurisdiction over all felonies; rather, it has jurisdiction over felonies committed on the high seas, and Mr. Sanchez did not, at any point, commit a felony on the high seas.   Therefore, this Court does not have jurisdiction.

## II.  THE STATUTE DOES NOT CONFER JURISDICTION IN THIS CASE

Mr. Sanchez is charged with violating the MDLEA, 46 U.S.C. § 70503 et seq.[1]  By its plain language, structure and purpose, the statute does not confer jurisdiction upon this

---

[1] The statute was amended effective February 2016.  Because the conduct is alleged to have occurred before the effective date of the amendment, the prior version of the statute, 46 USC § 70502 – 70506 effective October 6, 2006 to February 7, 2016, controls this case and the text of the statute in force at that time is discussed in this memo.  The current and former text of the MDLEA are attached as Appendix 1 to this memorandum.

Court to adjudicate this case against this person.  It does not extend this Court's power to foreign nationals who did not commit a narcotics offense while on board a vessel.

A.  The Plain Language

The Maritime Drug Law Enforcement Act (MDLEA) is a complex statute that both defines a crime and grants jurisdiction for the federal courts to proceed against those who may be charged with that crime and meet the specified jurisdictional test.   The plain language of the MDLEA, § 70503(a) does not extend jurisdiction to Mr. Sanchez because he was not on board a vessel and did not manufacture or distribute, or intend to manufacture or distribute, a controlled substance, or conspire to do those acts on board a vessel that is subject to the jurisdiction of the United States.

Section 70503(a) provides:

> (a) prohibitions – an individual may not knowingly or intentionally manufacture or distribute, or possess with the intent to manufacture or distribute, a controlled substance on board
>
> (1) a vessel of the United States or a vessel subject to the jurisdiction of the United States; or
>
> (2) any vessel if the individual is a citizen of the United States or a resident alien of the United States.

The first part of section 70503(a) defines the familiar crime of manufacturing, distributing or possessing narcotics with the intent to distribute.   The next part of the subsection specifies four groups of people, two in subsection (a)(1) and two others in subsection (a)(2), to whom the law applies.  Those four groups are: (1) persons on board a vessel of the United States; (2) persons on board a vessel subject to the jurisdiction of the United States; (3) U.S. citizens; or (4) U.S. resident aliens.  These four classes of people are subject to the jurisdiction of U.S. courts if they distribute narcotics while on

13

board a vessel.  This case involves the second class of persons, those on a vessel subject to the jurisdiction of the United States by virtue of that vessel being stateless. 46 U.S.C. § 70502(c).  It is undisputed that Mr. Sanchez was not aboard a vessel.  He does not fall into one of the four classes of persons the statute reaches.

 Mr. Sanchez seeks to join his co-defendants' motion, by letter dated October 28, 2016 and in the fifth ground for relief in this motion,  challenging whether the vessel at issue in this case was stateless and thus subject to the jurisdiction of the United States. He does not repeat those arguments here.  Rather, Mr. Sanchez submits that even if the vessel was stateless, the statute does not confer jurisdiction upon those who were not aboard that vessel.

The statute is clear on its face that it does not reach Mr. Sanchez and the language is consistent with principles of jurisdiction.  Of the four subgroups over which the statute confers jurisdiction, three are well-recognized and well-understood jurisdictional categories.  Those on board vessels bearing the U.S. flag and those who are U.S. citizens or U.S. resident aliens are clearly subject to the jurisdiction of American courts.  The fourth category, which is at issue here, is those on board a stateless vessel.  It is a specific and narrow category.  The statute does not assert jurisdiction generally over those who may commit drug crimes anywhere, nor even over all who commit crimes on the water.  Rather, it limits the assertion of jurisdiction by requiring that the conduct occur on a stateless vessel on the high seas.  These limitations must be given effect.  In *Bellaizac-Hurtado*, the prosecution of land-based defendants whose vessel was interdicted in Panamanian waters, instead of international waters, was found impermissible under the MDLEA. 779 F. Supp. 2d at 1344.  It follows that Mr. Sanchez's conduct is beyond the statute's reach because his

actions occurred on land in Colombia, and he was never interdicted at sea nor on board a vessel. Thus, the plain language of the statute does not grant jurisdiction in this case.

B.  The Text of the MDLEA Demonstrates Congressional Intent to Limit the Extraterritorial Reach of the Statute

Section 70503(b) of the statute provides for limited extraterritorial application of this statute. 46 U.S.C. § 70503(b).   The subsection reads: "Subsection (a) applies even though the act is committed outside the territorial jurisdiction of the United States."  First, this section, on its face, limits extraterritorial application to acts underlying substantive, not inchoate offenses.  Second, it is only a general statement of intention of extraterritorial application and does not expand or change the operative jurisdictional language in subsection (a).  It makes that exercise of extraterritorial jurisdiction explicit but does not alter it.  This statute is aimed at activities on board ships.  As such, section 70503(b) fits well in the statutory scheme of conferring extraterritorial jurisdiction on those who act while on board a vessel.

As can be anticipated given the plain text of the statute, most MDLEA cases involve defendants who were physically present on board a vessel. In *United States v. Rendon*, the Eleventh Circuit held that it was proper to indict crew members who jettisoned bales of cocaine in the high seas for conspiracy to distribute five or more kilograms of cocaine under the MDLEA. 354 F.3d 1320 (11th Cir. 2003); *see also United States v. Estupinan*, 453 F.3d 1336 (11th Cir. 2006) (affirming the conviction of a defendant caught on board a go-fast vessel with 118 bales of cocaine on the boat and surrounding waters).  Further, in *United States v. Moreno-Morillo*, the Ninth Circuit held that an MDLEA prosecution of Colombian nationals who were on board a vessel in international waters was permissible. 334 F.3d 819 (9th Cir. 2003); *see also United States v. Klimavicius-Viloria,* 144 F.3d 1249

(9th Cir. 1998) (holding convictions of crew members on board a vessel intercepted in international waters proper). The MDLEA is almost always applied to defendants on board ships.  In the few cases in which the theory is aggressively expanded, courts have either reined in the government or missed the significance of the overreach and failed to apply limiting legal principles.

C. <u>The United States Criminal Law Should not be Construed to Reach Extraterritorial Acts Committed by Foreign Nationals in a Foreign Country</u>

The MDLEA should not be construed in a manner that conflicts with international law.  Customary international law is the "general and consistent practice of states followed by them from a sense of legal obligation." Restatement (Third) of Foreign Relations §102(2) (1987). Customary international law has two components. The first is a general and consistent practice of the states, which should reflect wide acceptance among states involved in the relevant activity. *See Bellaizac-Hurtado* at 1252. The second component is a sense of legal obligation. *Id.* States must follow the practice because they believe it is part of international law, not because following the practice is desirable. *Id.*

The Second Circuit in *Flores v. Southern Peru Copper Corp.* indicated that because customary international law does not stem from any single, definitive identifiable source, it is of a "soft indeterminate character that is subject to creative interpretation."  414 F.3d 233, 249 (2d Cir. 2003). As such, the courts may use their discretion to determine, based on the facts and equity, whether certain conduct and prosecution of that conduct falls within the framework of customary international law. The Eleventh Circuit correctly opined that drug trafficking activity is not an international crime because it is not a crime under customary international law and is not a matter of mutual concern — further asserting that

uniform condemnation or criminalization does not make something an international crime. *Bellaizac-Hurtado*, 700 F.3d at 1256-57.

In order for the United States to properly exercise jurisdiction over Mr. Sanchez, it would need to claim universal jurisdiction, which allows any nation to exercise jurisdiction for certain offenses regardless of whether domestic interests are implicated. *Id* at 1259. Crimes that are subject to universal jurisdiction have been deemed "so threatening to the international community or so heinous in scope and degree that they offend the interest of all humanity." Michael P. Scharf, *Application of Treaty-Based Universal Jurisdiction to Nationals of Non-Party States*, 35 New Eng. L. Rev. 363, 368-69 (2001). Offenses historically warranting universal jurisdiction have been crimes of piracy, slavery, war crimes, genocide, apartheid, torture, and crimes against humanity. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 762 (2004). In the present case, Mr. Sanchez was charged with conspiring to manufacture or distribute, or intent to manufacture or distribute, a controlled substance on board a vessel that is subject to the jurisdiction of the United States. However, trafficking, or conspiring to traffic narcotics, does not fall within the narrow scope of universal jurisdiction, and thus does not grant the United States authority to punish the actions of a foreign national that were committed in his home country of Colombia.

D. Definitions of Crime and Theories of Complicity do not Confer Jurisdiction

The government is keen on the argument that subject matter jurisdiction is granted through a conspiracy liability and the theory of complicity that goes with it. It is undisputed that 46 U.S.C § 70506 (b) criminalizes conspiracies to violate § 70503. But that is no help to the government in this case. That subsection only defines an additional theory of liability on which the penalties listed may be imposed. It does not confer jurisdiction

17

beyond that conferred in section 70503.  This subsection only reaches attempts or conspiracies committed on board a covered vessel.  That understanding fills a gap that would be left were there jurisdiction but only the inchoate form of the offense had been committed.  *See Klimavicius-Viloria* 144 F.3d at 1266 (finding a valid theory of conspiracy where an individual on the vessel was an engineer that was responsible for maintaining the tanks containing cocaine).

Mr. Sanchez also does not dispute that under *Pinkerton v. United States*, a conspirator may be held liable for the actions of his co-conspirator that fall within the scope of the conspiracy and were reasonably foreseeable as a necessary or natural consequence of the unlawful agreement. 328 U.S. at 648.  One could argue that the overt acts of the conspirators on board the vessel is attributable to Mr. Sanchez, thus satisfying the "on board" requirement.  The government and at least one court, have misread section 70506(b) to confer jurisdiction in all cases of inchoate liability for attempt or conspiracy to commit a crime. *United States v Ballestas*, 795 F.3d 138 (D.C. Cir. 2015) (concluding that because the substantive offense established in section 70503(a) applies extraterritorially,  the conspiracy to commit the substantive offense under section 70506 also has extraterritorial reach).  However, a theory of complicity does not confer jurisdiction:

> The ability of a United States court to exercise jurisdiction over that particular defendant, however, is a preliminary determination totally distinct from the crime itself and must be considered before any United States court or jury may determine whether the defendant acted as a principal or an aider and abettor.

*United States. v. Perlaza*, 439 F.3d 1149, 1168 (9th Cir. 2006).  The government is confusing the fundamental requirement of jurisdiction with a theory of criminal liability that may only be explored when jurisdiction is already established.

On its face, the MDLEA grants jurisdiction over non-U.S. citizens or residents only if they commit the proscribed acts while on board a covered vessel.  That is the legal reach of section 70503(a).  To the extent section 70503(b) is read to create any additional extraterritorial reach, although that is not the language of the section, it is limited to the acts of possession, manufacture or distribution proscribed in subsection (a) by its text.  The language is specific and omits both conspiracy and aiding and abetting.  To the degree section 70506(b) makes a conspiracy to violate subsection 70503(a) a crime, it only creates liability, not jurisdiction.   The MDLEA does not reach Mr. Sanchez's conduct because he was not on board the vessel, and by applying this statutory provision to his actions the government has stretched the MDLEA's jurisdictional reach beyond authorized bounds.

### III. THE INDICTMENT IS FATALLY NON-SPECIFIC ON THE REQUIRED ELEMENT OF THE ALLEGED AGREEMENT AMONG THOSE ON LAND AND THOSE ON THE VESSEL

The indictment does not allege facts sufficient to prove that Mr. Sanchez knowingly or intentionally manufactured and distributed a controlled substance aboard a vessel subject to the jurisdiction of the United States or conspired to do so.  An indictment or information must be a plain, concise, and definite written statement of essential facts constituting the offense charged by the attorney for the government. FRCrP 7(c)(1). The government has yet to provide any specific allegations how and when Mr. Sanchez conspired to manufacture or distribute controlled substances aboard a vessel subject to the jurisdiction of the United States, as required by 46 U.S.C. § 70503(a). To aid and abet, "it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wished to bring about, that he seek by his action to make it succeed." *Klimavicius-Viloria*, 144 F.3d at 1263 (quoting *Nye & Nissen v. United States,*

336 U.S. 613, 619 (1949)). Mere participation is not enough; the government must also show that the defendant "intentionally assisted in the venture's illegal purpose." *United States v. Vasquez-Chan*, 978 F.2d 546, 552 (9th Cir. 1992).

In order to raise a pretrial objection to the specificity of an indictment within the meaning of Rule 12(b)(2), a defendant "must apprise the District Court of the particular portions of the indictment that are lacking in the requisite specificity, and explain why, in the circumstances, greater specificity is required." *United States v. Crowley*, 236 F.3d 104, 111 (2d Cir. 2000).   In relation to Mr. Sanchez, the government must assert facts sufficient to prove that he knowingly participated in these activities. The Eleventh Circuit found sufficient evidence of knowing participation to include:

> a voyage on a small vessel evincing a close relationship between captain and crew; suspicious behavior or diversionary maneuvers before apprehension; attempts to flee; inculpatory statements made after apprehension; witnessed participation by crewmen; obviousness of the contraband; or absence of equipment necessary to the intended use of the vessel.

*United States v. Ospina*, 823 F.2d 429, 433 (11th Cir. 1987) (quoting *United States v. Vidal-Hungria* 794 F.2d 1503, 1515 (11th Cir. 1986); *see also Klimavicius-Viloria* 144 F.3d at 1265 (finding sufficient knowledge where crew members on board acted uncooperatively when the Coast Guard began searching the boat).

As has been recognized by the Ninth and Eleventh Circuits, evidence of knowledge may be inferred from circumstances surrounding the vessel and crew members on board the vessel at sea, not the actions of a land-based individual. In this case, the government has not specified what connection, if any, exists between Mr. Sanchez and the defendants who were arrested on the boat.  Given the fact that the government's entire case relies on

such a connection for both the claim of jurisdiction and the claim of liability, the indictment must provide specific facts as to how, when, and where Mr. Sanchez formed an agreement with these individuals.  This is particularly so in a case in which the government chooses to prosecute Mr. Sanchez in New York City, thousands of miles from where the relevant events are alleged to have occurred.  While venue is not argued in this motion, the legal concept highlights the burdens imposed upon a criminal defendant when he is forced to litigate at a distant place.  The government has chosen the time, place and manner of proceeding.  It should not be permitted to multiply its self-created advantage with unnecessary and improper obscurity as to the basic allegations.

The indictment does not contain essential facts that will apprise Mr. Sanchez of what he is to meet at trial. *See United States v. Hernandez* 980 F.2d 868, 871 (2d Cir. 1992); *see also Cochran v. United States*, 157 U.S. 286 (1895) (stating that an indictment must contain every element of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet at trial). Because the indictment is deficient in its allegation of essential facts, it is an inadequate basis for which Mr. Sanchez may prepare an adequate defense.  The indictment must be dismissed pursuant to Fed. R. Crim. P. 12(b)(3)(B).

## IV. THIS PROSECUTION VIOLATES MR. SANCHEZ'S FIFTH AMENDMENT DUE PROCESS RIGHTS BECAUSE HE HAS NO DIRECT OR INDENTIFIABLE CONNECTION TO THE UNITED STATES

Whether the Due Process clause limits the extraterritorial application of federal criminal laws has yet to be uniformly decided. *See Ballestas*, 795 F.3d 148.  Even if the MDLEA did confer jurisdiction in this case, it would still have to comply with Constitutional norms for criminal prosecutions.  In this case, application of American

21

judicial authority to impose a criminal sanction would be so arbitrary and fundamentally unfair as to violate the Due Process clause of the Fifth Amendment.   The crux of this reasoning as applied to this case is that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Ali,* 718 F.3d 929, 944 (D.C. Cir. 2013) (quoting *Bouie v. City of Columbia*, 378 U.S. 347 (1964)).

Mr. Sanchez is neither a citizen nor a resident of the United States. He was in no way connected to the United States at the time he committed his actions.[2] To subject an individual who did not avail himself to the protections of the United States to criminal penalties under U.S. law is both unfair and arbitrary.  It was not reasonably foreseeable that, given the absence of any connection to the United States, Mr. Sanchez might be punished by the United States government for engaging in actions in Colombia that had no intended or indirect effect on the United States. *Compare with United States v. Bodye*, 172 F. Supp. 3d 15 (D.D.C. 2016) (holding that it was not arbitrary or unfair to prosecute under the MDLEA an individual who was a lawful permanent resident of the United States, who was living in the United States at the time of the conspiracy, and who purposely availed himself to the protections of U.S. law and legal status in the country).

Several circuits have correctly recognized that for a court to properly exercise jurisdiction over a foreign defendant, "there must be a sufficient nexus between the defendant and the United States so that such application would not be arbitrary or fundamentally unfair." *Klimavicius-Viloria,* 144 F.3d  at 1256; *United States v. Brehm*, 691

---

[2] The government does allege a meeting in New York City between a person indicted as a co-conspirator in this case and another person in furtherance of this conspiracy.  That allegation does not address, let alone overcome, Mr. Sanchez's lack of connection to or contemplation of the law and authority of the United States.

F.3d 547, 552-54 (4th Cir. 2012); *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011) (stating that due process imposes limits on extraterritorial reach). In *United States v. Caicedo*, the Ninth Circuit stated that "punishing a crime committed on foreign soil is an intrusion into the sovereign territory of another nation." *Caicedo*, 47 F.3d 370, 372 (9th Cir. 1995) (further stating that "such an intrusion should not be undertaken absent proof that there is a connection between the criminal conduct and the United States sufficient to justify the United States' pursuit of its interest."); *see also United States v. Davis*, 905 F.2d 245, 248-49 (9th. Cir 1990) (holding that prosecution under the MDLEA concerning a foreign national who was arrested on the high seas for attempting to smuggle marijuana into the United States was proper because the defendant intended to smuggle the contraband *into* the United States).  A sufficient nexus has been found where narcotics have been destined for the United States, upon testimony of the narcotics' destination, and consideration of the United States narcotics market. *Klimavicius-Viloria,* 144 F.3d at 1257. None of these scenarios are at play with regard to Mr. Sanchez, and where neither a defendant's actions nor his contacts implicate or impact the interests of the United States, jurisdiction is not proper. *Davis*, 905 F.2d at 249 (finding sufficient nexus where the "plan for shipping the drugs was likely to have effects in the United States."). Thus, because a theory of complicity does not automatically confer jurisdiction, and because Mr. Sanchez's actions have no connection to the United States, the court cannot properly exercise jurisdiction over him in this case.

Unlike those who were on the vessel and were indicted, Mr. Sanchez did not assume the risk of being apprehended by another nation in international waters.  Instead, he chose to stay at home and subject himself to the laws, norms and customs of his own country.

But he finds himself facing the most serious charges in a country foreign to him.  Because there is no connection to the United States stemming from Sanchez's conduct or his contacts, prosecution under the MDLEA violates his due process rights and is inconsistent with our basic notion of ordered liberty.

## V.  MR. SANCHEZ JOINS MR. CATANO'S MOTION

As directed by the Court, Mr. Sanchez filed a letter on October 28, 2016 joining in a motion filed by counsel for Mr. Alexander Cataño Aragon, a co-defendant in this action and broadly reserving all rights and remedies that may be or become available pursuant to that motion.    Mr. Sanchez seeks the same relief in this motion.

## CONCLUSION

This is a case of jurisdictional overreach.  The impulse to police the world and remedy harm wherever it may be caused is both human and praiseworthy.  But so are the impulses to principled consistency, self-restraint and fidelity to law.  The Court lacks the power to hear this case and the arrogation of that authority would be a deleterious departure from settled understandings, practices and most importantly, governing law.

**Wherefore,** Mr. Daniel German Sanchez Alarcon respectfully requests that the Court grant the relief he seeks herein, pursuant to the United States Constitution, Federal Rule of Criminal Procedure 12(b) and all other applicable legal authority and issue an Order:  (1) dismissing the indictment because the exercise of jurisdiction over this case and this defendant violates Article I, Section 8, Clause 10 of the United States Constitution, pursuant to Fed. R. Crim. P. 12(b)(2); (2) dismissing the indictment because no statute or other source of law confers jurisdiction upon this Court to hear this case

24

against this defendant, pursuant to Fed. R. Crim. P. 12(b)(2); (3) dismissing the

indictment for lack of specificity, pursuant to Fed. R. Crim. P. 12(b)(3)(B)(iii); (4)

dismissing the indictment because continued prosecution of this case violates the

defendant's due process rights as protected by the Fifth Amendment to the United States

Constitution, pursuant to Fed. R. Crim. P. 12(b)(3);  5) permitting Mr. Sanchez to join in

the motion filed, by counsel, on behalf of Mr. Alexander Catano Aragon, pursuant to Fed.

R. Crim. P. 12(b)(3); and granting such other and further relief as the Court deems just

and proper.

Dated: New York, NY
          November 21, 2016

Respectfully submitted,

_____
Michael W Martin
Executive Director

Ian Weinstein
Supervising Attorney

Lincoln Square Legal Services
Fordham Law School
150 West 62nd Street, 9th Floor
New York, New York 10023
Tel: (212) 636-6934
Attorneys for Defendant
**Mr. Daniel German Sanchez Alarcon**

On the memo: Daisy Sexton
                Princess Uchekwe
                Legal Interns

25

To: Amanda Houle, Esq.
    Assistant United States Attorney
    Southern District of New York
    **By ECF**

# APPENDIX 1

Current Version of 46 U.S.C. § 70503
Effective February 8, 2016

§ 70503. Prohibited acts

 **(a) Prohibitions.**--While on board a covered vessel, an individual may not knowingly or intentionally--

> **(1)** manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance;

> **(2)** destroy (including jettisoning any item or scuttling, burning, or hastily cleaning a vessel), or attempt or conspire to destroy, property that is subject to forfeiture under section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 881(a)); or

> **(3)** conceal, or attempt or conspire to conceal, more than $100,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage, merchandise, or other container, or compartment of or aboard the covered vessel if that vessel is outfitted for smuggling.

**(b) Extension beyond territorial jurisdiction.**--Subsection (a) applies even though the act is committed outside the territorial jurisdiction of the United States.

**(c) Nonapplication.**--

> **(1) In general.**--Subject to paragraph (2), subsection (a) does not apply to--

>> **(A)** a common or contract carrier or an employee of the carrier who possesses or distributes a controlled substance in the lawful and usual course of the carrier's business; or

>> **(B)** a public vessel of the United States or an individual on board the vessel who possesses or distributes a controlled substance in the lawful course of the individual's duties.

> **(2) Entered in manifest.**--Paragraph (1) applies only if the controlled substance is part of the cargo entered in the vessel's manifest and is intended to be imported lawfully into the country of destination for scientific, medical, or other lawful purposes.

**(d) Burden of proof.**--The United States Government is not required to negative a defense provided by subsection (c) in a complaint, information, indictment, or other pleading or in a trial or other proceeding. The burden of going forward with the evidence supporting the defense is on the person claiming its benefit.

**(e) Covered vessel defined.**--In this section the term "covered vessel" means--

> **(1)** a vessel of the United States or a vessel subject to the jurisdiction of the United States; or

(**2**) any other vessel if the individual is a citizen of the United States or a resident alien of the United States.

Former Version of 46 U.S.C. § 70503
Effective October 6, 2006 to February 7, 2016

§ 70503. Manufacture, distribution, or possession of controlled substances on vessels

**(a) Prohibitions.**--An individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board--

> **(1)** a vessel of the United States or a vessel subject to the jurisdiction of the United States; or

> **(2)** any vessel if the individual is a citizen of the United States or a resident alien of the United States.

**(b) Extension beyond territorial jurisdiction.**--Subsection (a) applies even though the act is committed outside the territorial jurisdiction of the United States.

**(c) Nonapplication.**--

> **(1) In general.**--Subject to paragraph (2), subsection (a) does not apply to--

>> **(A)** a common or contract carrier or an employee of the carrier who possesses or distributes a controlled substance in the lawful and usual course of the carrier's business; or

>> **(B)** a public vessel of the United States or an individual on board the vessel who possesses or distributes a controlled substance in the lawful course of the individual's duties.

> **(2) Entered in manifest.**--Paragraph (1) applies only if the controlled substance is part of the cargo entered in the vessel's manifest and is intended to be imported lawfully into the country of destination for scientific, medical, or other lawful purposes.

**(d) Burden of proof.**--The United States Government is not required to negative a defense provided by subsection (c) in a complaint, information, indictment, or other pleading or in a trial or other proceeding. The burden of going forward with the evidence supporting the defense is on the person claiming its benefit.