UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
    UNITED STATES OF AMERICA

      - v. -

    DANIEL GERMAN ALARCON SANCHEZ,

      Defendant.

S6 15 Cr. 292 (PGG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING SUBMISSION

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Jason M. Swergold
Amanda L. Houle
Assistant United States Attorneys
   -Of Counsel-



U.S. Department of Justice

*United States Attorney
Southern District of New York*

*The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007*

February 20, 2018

**BY ECF**

Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re: *United States* v. *Daniel German Alarcon Sanchez*, S6 15 Cr. 292 (PGG)

Dear Judge Gardephe:

      The defendant, Daniel German Alarcon Sanchez, is scheduled to be sentenced on February 28, 2018, for his offense in this case; namely, conspiracy to distribute and possess with the intent to distribute 500 grams and more of cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70506. The Government respectfully makes this submission in advance of the sentencing.

      Under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the parties and the United States Probation Department ("Probation") agree that the Guidelines range applicable to the defendant's conduct is 168 to 210 months' imprisonment, with a mandatory minimum of sixty months' imprisonment. For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines range is appropriate.

## Background

    A.    Offense Conduct

      In or about early 2015, the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), conducted an investigation into a drug trafficking organization (the "DTO") based in Colombia, that was transporting multi-kilogram quantities of cocaine by speedboat and other maritime vessels from Colombia to points elsewhere. (PSR ¶ 13). During the course of the investigation, HSI learned that the defendant, along with two of his co-defendants (Carlos Alberto Salinas Diaz and Luis Fernando Uribe) and an HSI cooperating source ("CS-1"), was working with the DTO to send approximately 1,000 kilograms of cocaine from Colombia to Australia. (PSR 13).

1

In order to coordinate the shipment of cocaine, the defendant and Salinas Diaz met with CS-1 at a restaurant in Bogota, Colombia, where they asked CS-1 if CS-1 could arrange transport of the drugs. (PSR ¶ 14). Because CS-1's area of expertise was in money laundering, CS-1 told the defendant and Salinas Diaz that he/she had connections to a shipping company that could transport the cocaine for the DTO. (PSR ¶ 14). During the meeting, the destination of the drugs was also discussed, and the defendant and Salinas Diaz told CS-1 that, while the DTO had sent drugs to the United States in the past, they men were concerned about being detected by U.S. law enforcement this time around. (PSR ¶ 14).

The defendant and his co-defendants continued to work with CS-1 to arrange the shipment of the cocaine. For example, the defendant provided CS-1 with copies of pages of passports for three of Salinas Diaz's employees who would be involved in transporting the cocaine to Australia. (PSR ¶ 15). The defendant and his co-defendants also had several phone calls with CS-1 during which they discussed the details of the shipment, including the date of the shipment, the means for getting the cocaine to a larger ship waiting offshore, and the names of the captains of the ship (who were in fact undercover agents). (PSR ¶ 15).

In the days before April 14, 2015, the DTO sent out two speedboats, loaded with hundreds of kilograms of cocaine, to meet with CS-1's ship that was waiting offshore. (PSR ¶ 16). On April 14, a U.S. Navy helicopter observed one of the DTO's speedboats, called the El Vacan, about 135 nautical miles off the coast of Isla del Coca, a Costa Rican island. (PSR ¶ 17). As the helicopter approached, crewmembers onboard the El Vacan began dumping large packages overboard. (PSR ¶ 17). Members of the U.S. Coast Guard then approached the El Vacan and found four crewmembers. (PSR ¶ 18). The USCG also recovered one of the passports from which pages had been copied and given to CS-1 by the defendant, and 550 kilograms of cocaine. (PSR ¶ 18). The USCG was unable to locate the DTO's second speedboat.

### B. The Charges and the Defendant's Guilty Plea

The defendant was arrested on September 17, 2015, in Colombia by Colombian authorities, and extradited to the United States. (PSR ¶ 21). He was ultimately charged in Superseding Indictment S6 15 Cr. 292 (PGG), with one count of conspiracy to violate the Maritime Drug Law Enforcement Act ("MDLEA"), and one count of a substantive violation of the MDLEA. (PSR ¶ 1-3).

### C. The Guidelines Range

The parties do not dispute the PSR's calculation of the offense level under the Guidelines, which calculates the applicable offense level as 35 (PSR ¶ 36) and the defendant's Criminal History Category as I (PSR ¶ 40). This results in a Guidelines range of 168 to 210 months' imprisonment. (PSR ¶ 67).

**Discussion**

*Applicable Law*

Although the Guidelines no longer play a mandatory role at sentencing, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005). "Pursuant to the 'remedy opinion' [in *Booker*], the now advisory Guidelines are to be considered together with the other factors set forth in 18 U.S.C. § 3553(a), by judges fashioning sentences." *United States* v. *Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006); *see also Booker*, 543 U.S. at 261-62. Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings, *id.* at 49. *See also United States* v. *Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) (the Guidelines "'cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges.'" (quoting *United States* v. *Jiminez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (*en banc*))); *see also Fernandez*, 443 F.3d at 33-34 ("It was not error for the [District Court] to employ the Guidelines range as a starting point and then to determine whether the arguments presented pursuant to the § 3553(a) factors warranted 'lighten[ing]' of . . . or fashioning of 'an alteration to' . . . the advisory Guidelines sentence").

The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *Fernandez*, 443 F.3d at 27; *see also Kimbrough* v. *United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting *Rita* v. *United States*, 551 U.S. 338, 350-51 (2007))).

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and

3

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

*Application*

In light of the circumstances of the instant offense, a sentence within the Guidelines range of 168 to 210 months' imprisonment is appropriate.

First, the defendant's conduct was unquestionably serious. Unlike the defendants that this Court and others in this District have recently sentenced in MDLEA cases, the defendant was not a poor, uneducated fisherman forced to transport drugs by his extremely impoverished living conditions. The defendant completed the 11th grade of high school, was enlisted in the Colombian armed forced, and had been trained as an auto mechanic and a welder. (PSR ¶ 58). And despite his contention that he played a "modest" role, the defendant in fact played a critical role in the drug operation. He was one of the three individuals who planned and coordinated the shipment of approximately 1,000 kilograms of cocaine from Colombia. He was intimately involved in the process, working directly with CS-1, who he believed would be helping secure a vessel to transport the drugs. And as he admits in his sentencing submission, he was also prepared to ship out on one of the vessels as the boat's mechanic. A substantial term of imprisonment is necessary to reflect the nature, circumstances, and seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). But for the interdiction of one of the speedboats, the defendant would have been responsible for delivering approximately 1,000 kilograms of cocaine – an exorbitant amount with an estimated street value in New York City of over $20 million – from its point of supply in Colombia to Australia.

Second, a Guidelines sentences is warranted to afford adequate deterrence. Large-scale drug traffickers seeking financial gain often use the vast span of international waters, believing that in doing so they will go undetected. Dissuading individuals from agreeing to participate in this kind of activity is critical in disrupting the flow of illegal drugs, in mass quantities, out of Colombia and other parts of South America. Moreover, a Guidelines sentence is particularly appropriate because individuals like the defendant place all of the risk on the people who operate the boat. Therefore, when law enforcement is able to identify and apprehend the larger players who are ultimately responsible for the shipment, and who stand to gain financially from it, it is

important to send a message through a sentence that would adequately deter such conduct by others.

In seeking a sentence of sixty months—a downward variance of 108 months from the bottom of the Guidelines range—the defendant alludes to sentences that were given in "similar cases in the Southern District of New York." (Def. Sent. Subm. at 7). But the defendant is not similarly situated to the other defendants in these MDLEA cases, who have received sentences ranging from approximately 8 months to as high as 96 months. All of those defendants were minor participants who were not responsible for coordinating the shipment. They were offered money and showed up, with no control over the amount of drugs they would be transporting. In contrast, the defendant was part of a trio that sought to send this massive quantity of drugs overseas, and his sentence should reflect the role that he played. And it is worth noting that sentences in this district for even the lowest level participants are significantly lower than sentences imposed on similarly situated defendants in other districts who have committed similar conduct. *See generally*, *United States* v. *Trinidad*, 839 F.3d 112 (1st Cir. 2016) (defendant caught with 144 kilograms of cocaine, and who received a two-point navigator enhancement, sentenced to 108 months' sentence); *United States* v. *Wilchombe*, 838 F.3d 1179 (11th Cir. 2016) (defendants caught with 35 kilograms of cocaine and 860 kilograms of marijuana sentenced to 120 months' imprisonment); *United States* v. *Macias*, 654 Fed. App'x 458 (11th Cir. 2016) (defendant caught with approximately 300 kilograms of cocaine sentenced to 120 months' imprisonment); *United States* v. *Persaud*, 605 Fed. App'x 791 (11th Cir. 2015) (defendant caught with approximately 1200 kilograms of marijuana sentenced to 132 months' imprisonment); *United States* v. *Nueci-Pena*, 711 F.3d 191 (1st Cir. 2013) (defendant caught with over 1140 pounds (approximately 517 kilograms) of cocaine and heroin sentenced to 24 years' imprisonment).

## Conclusion

For the reasons set forth above, the Government respectfully submits that the defendant should be sentenced within the Guidelines range of 168 to 210 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney


By: __/s/ Jason M. Swergold_____
Jason M. Swergold
Amanda L. Houle
Assistant United States Attorneys
(212) 637-1023/2194

5